IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:12-CV-258-BO

| | |
|---|---|
| TIMOTHY and COLLEEN REDMOND, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | O R D E R |
| ) | |
| GREEN TREE SERVICING, LLC, ) | |
| ) | |
| Defendant. ) | |
| _____) | |

This matter is before the Court on the defendant's partial motion to dismiss [DE 10]. For the reasons stated herein, the defendant's motion is DENIED.

## BACKGROUND

On or before November 2011, Lawrence F. Dudley entered into a mortgage loan agreement ("Dudley Debt") with defendant Green Tree Servicing, LLC ("Green Tree"). At some point thereafter, Mr. Dudley passed away leaving the Dudley Debt to his wife Carolina Dudley. On or before January 2012, the Dudley Debt went into default and remains in default presently. Prior to January 2012, Plaintiffs Timothy and Colleen Redmond entered into a residential lease agreement with Mrs. Dudley and concerning the mortgaged property. The plaintiffs never entered into any agreement with defendant Green Tree and did not agree to assume any portion of the Dudley Debt. Nevertheless, at various times throughout 2012 defendant Green Tree contacted the plaintiffs in various attempts to collect the Dudley Debt. Defendant's efforts were successful to the extent that on February 20, 2012 plaintiffs' sister contacted the defendant and

1

made a payment of $704.73 towards the Dudley Debt. The plaintiffs have alleged that Green Tree's harassment included the following incidents:

- January 23, 2012 – A Green Tree representative contacted the plaintiffs, told them to "get out now," and referred to Mr. and Mrs. Redmond as "squatters."

- January 23, 2012 – A Green Tree representative contacted the plaintiffs for a second time in one day attempting to collect the Dudley Debt.

- January 24, 2012 – A Green Tree representative contacted the plaintiffs and attempted to collect the Dudley Debt.

- January 31, 2012 – A Green Tree representative contacted the plaintiffs and attempted to collect the Dudley Debt. The plaintiffs allege that the representative was rude and verbally abusive during this phone call.

- February 7, 2012 – A Green Tree representative contacted the plaintiffs and had the following exchange, paraphrased here, with Ms. Redmond:
  Green Tree (GT): Asks how the plaintiffs plan to take care of the house matter.
  Colleen Redmond (CR): Asks that GT cease and desist from contacting her and her husband.
  GT: Refers to the plaintiffs as squatters and instructs the plaintiffs to "get out."
  GT: Informs CR that the house is a repossession and that GT will be coming to take the house because it has wheels.
  CR: States that her property is in the home.
  GT: States that if the plaintiffs' property is not removed from the house it will be taken with the house.

- February 8, 2012 – A Green Tree representative contacted the plaintiffs and attempted to collect the Dudley Debt. Ms. Redmond stated that she and her husband were only renting the home and were not responsible for payments.

- February 10, 2012 – A Green Tree representative contacted the plaintiffs and attempted to collect the Dudley Debt. Mr. Redmond spoke with the representative and alleges that she informed him that Green Tree would be coming to take pictures of the home and to lock the Redmonds out of the home unless they paid the account up to date. The Green Tree representative further threatened to contact the landowner, Donald Ray Long, because he could evict the plaintiffs easily.

- March 26, 2012 – Ms. Redmond changes her phone number to avoid further contact by Green Tree.

2

- April 30, May 1, May 2, May 3, May 7, May 8, May 9, May 10, May 11, May 12, May 14, May 15, May 16, May 17, May 18, May 19, May 21, May 22, May 23, May 24, May 25, and May 26, 2012 – A Green Tree representative contacted the plaintiffs on each of these days, sometimes multiple times in a single day, and left a voicemail demanding that the plaintiffs return the call immediately. None of the voicemails left by defendant Green Tree's representatives indicated that the purpose of the communication was to collect a debt.[1]

On September 5, 2012, the plaintiffs filed the instant lawsuit alleging that the defendant had violated provisions of the North Carolina Unfair Deceptive Trade Practices Act (UDTPA), N.C.G.S. §75-1.1 *et seq.*, and the Telephone Consumer Protection Act, 47 U.S.C. § 227(b)(1)(A)(iii). The defendant has moved to dismiss the plaintiffs' claims under North Carolina's UDTPA. For the reasons discussed herein, the defendant's motion is denied.

## DISCUSSION

A court's ruling on a motion to dismiss only addresses whether a claim for relief has been stated, "it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). A complaint should survive a motion to dismiss only if it "states a plausible claim for relief" supported by well-pleaded facts that permit the court "to infer more than the mere possibility of misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Such facts must "state a claim that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In order to establish a facially plausible claim, a plaintiff must do more than simply plead facts that are consistent with defendant's liability or merely restate the elements of the cause of action. *Iqbal*, 556 U.S., at 678. The facts pleaded by the plaintiff must allow the court to draw a reasonable inference that the defendant is actually liable for the misconduct alleged. *Id.* In drawing such

---

[1] The Fair Debt Collection Practices Act requires that debt collectors identify themselves and communicate their intent to collect a debt. *See* 15 U.S.C. § 1692(e)(11).

3

inferences, the court should view the complaint in the light most favorable to the plaintiff and should accept well-pleaded allegations as true. *Mylan Labs, Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 2009).

Here, the defendant argued that the plaintiffs' claims under Article 2 of the UDTPA, the North Carolina Debt Collection Act ("NCDCA"), fail as a matter of law because the plaintiffs neither established that they are consumers under the law, nor that the debt at issue is covered by the statute. In essence, defendant argued that because the plaintiffs did not actually incur the Dudley Debt they are not consumers under the NCDCA and, therefore, do not have standing to bring claims under the act. It is undisputed that the Dudley Debt is a valid one, the defendant's argument is limited to whether the plaintiffs have a relationship to that debt that is sufficient to make them consumers under the NCDCA.

Under the NCDCA a "debt collector" is prohibited from using "unfair debt, deceptive representations, or other unconscionable means to collect a 'debt' from a 'consumer.'" *Ross v. Washington Mut. Bank*, 566 F.Supp.2d 468, 479 (E.D.N.C. 2008)(citing *Davis Lake Cmty. Ass'n v. Feldmann*, 138 N.C.App. 292, 295-97 (2000)). To state a claim under that law, three requirements must be met: (1) the obligation must be a debt; (3) the one owing or allegedly owing the debt must be a consumer; (3) the one trying to collect the debt must be a debt collector. *Reid v. Ayers*, 138 N.C.App. 261, 263 (2000). The statute contains the following definitions of those terms:

> The following words and terms as used in this Article shall be construed as follows:
> (1) "Consumer" means any natural person who has incurred a debt or alleged debt for personal, family, household or agricultural purposes.
> (2) "Debt" means any obligation owed or due or alleged to be owed or due from a consumer.

4

(3) "Debt collector" means any person engaging, directly or indirectly, in debt collection from a consumer except those persons subject to the provisions of Article 70, Chapter 58 of the General Statutes.

N.C.G.S. § 75-50. In addition to the plain language of these definitions, the North Carolina Court of Appeals has looked to the similarly constructed Fair Debt Collection Practices Act (FDCPA) in construing this state statute. *See Reid*, 138 N.C.App., at 263.

This Court also finds the FDCPA's legislative history and interpretations of that Act by other courts to be persuasive. Specifically, this Court finds that the stated congressional purpose for implementing the federal debt collection law included "eliminat[ing] the recurring problem of debt collectors dunning the wrong person." S.Rep. No. 95-382, at 4, 1977 U.S.C.C.A.N. 1695, 1699. Circuit courts have also noted Congress's motivation. *See e.g. Baker v. GC Serv. Corp.*, 677 F.2d 775, 777 (9th Cir. 1982)(noting that a debtor has standing under the Act regardless of whether a valid debt exists and citing to the Congressional record.); *McCartney v. First City Bank*, 970 F.2d 45, 47 (5th Cir. 1992); and *Meadows v. Franklin Collection Servs., Inc.*, 414 Fed. Appx. 230, 233 (11th Cir. 2011)(finding that the FDCPA is designed to protect "every individual, whether or not he owes the debt."). Moreover, the plain language of the statute references both *alleged* debts and *alleged* debtors. This language would be rendered superfluous if the court imposed on plaintiffs an additional requirement that they demonstrate they themselves actually incurred the debt.

The defendant argued that giving weight and meaning to the statute's use of "alleged" would render the statute's use of "incurred" superfluous. The defendant's extensive citation of the opinions of judges from this state's other districts provide an interesting context in which to evaluate this issue, but are neither binding, nor particularly persuasive. For example, the defendant cited *Fisher v. Eastern Air Lines,* Inc., 517 F.Supp. 672, to support its position that a

5

NCDCA plaintiff must have actually incurred the debt at issue. In fact, that court found that "incurred" merely required the plaintiff to have "some connection with the underlying debt or alleged debt." In that case, the plaintiff did not have standing because the debt collector had attempted to collect from him on the basis of mistaken identity – he and the actual debtor shared the same name. Here, there is a strong connection between the plaintiffs and the underlying debt, further the defendant actively worked to perpetuate the plaintiffs' impression that they were legally bound by the debt. As such, this Court finds that the NCDCA does extend to claims by individuals against whom a debt collector has made purposeful, targeted, and directed attempts to collect a debt alleged to be owed by the plaintiffs.

The plaintiffs have provided extensive and specific allegations regarding the harassment to which they were subjected by the defendant in an attempt to collect a debt for which they were not liable. The defendant allegedly used various tactics to collect on that debt, including leading the plaintiffs to believe that they were actually obligated to make payments toward it. Taking the plaintiffs' complaint as true, throughout the collection process defendant alleged that plaintiff owed the debt and must pay on it or face certain consequences. The defendant cannot now hide its harassment of the plaintiffs behind an inventive construction of a statute that is designed to prohibit just that behavior. This was not a case of mistaken identity, but purposeful, targeted, and directed communications for the purpose of collecting a debt. Without delving into the merits of this matter, but taking the plaintiffs' complaint in the light most favorable to them and finding that the statutory language encompasses claims by individuals who are harassed for debts allegedly, if not actually, incurred by them the Court finds that the complaint did state a claim upon which relief might be granted. As such, the defendant's motion for partial dismissal is denied.

## CONCLUSION

For the foregoing reasons, the defendant's motion is DENIED pursuant to Federal Rule of Civil Procedure 12(b)(6).

SO ORDERED.

This __20__ day of April, 2013.

TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE