IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:12-CV-258-BO

| | | |
|---|---|---|
| TIMOTHY and COLLEEN REDMOND, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| GREEN TREE SERVICING, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the Court on the defendant's motion for summary judgment [DE 32], plaintiffs' motion for partial summary judgment [DE 34], plaintiff's motion for leave to file physical evidence [DE 35], and defendant's motion to substitute [DE 42]. For the reasons stated herein, the defendant's motion for summary judgment is GRANTED, plaintiffs' motion for partial summary judgment is DENIED, plaintiffs' motion to file is GRANTED and defendant's motion to substitute is GRANTED.

## BACKGROUND

On or about March 18, 2000, Lawrence F. Dudley entered into a manufactured home loan agreement ("Dudley Debt") with defendant Green Tree Servicing, LLC ("Green Tree"). At some point thereafter, Mr. Dudley passed away leaving the Dudley Debt to his wife Carolyn Dudley. Prior to January 2012, the Dudley Debt went into default and remains in default presently. Prior to January 2012, Plaintiffs Timothy and Colleen Redmond entered into a residential lease agreement with Ms. Dudley and concerning the mortgaged property. The plaintiffs never entered into any agreement with defendant Green Tree and did not agree to

1

assume any portion of the Dudley Debt. On January 1, 2012, Colleen Redmond delivered the rent check to Ms. Dudley who accepted it.

Shortly thereafter, plaintiffs received a letter from Ms. Dudley written on a Green Tree account statement in which Ms. Dudley confessed that she had taken plaintiffs' recent rent checks and spent the money on living expenses, rather than on paying the Dudley Debt. She suggested plaintiffs contact Green Tree to work out an arrangement to remain in the secured manufactured home.

After receiving the letter from Ms. Dudley, Timothy Redmond called Green Tree on January 13, 2012. He called to find out how he could purchase the house and inquired about the possibility of assuming the Dudley Debt. Green Tree investigated the matter and called Timothy to inform him that because Green Tree was the lienholder, not the owner, and because Green Tree did not have a power of attorney from Ms. Dudley, it was not in a position to sell or lease him the manufactured home. According to Timothy, Green Tree told him that the best they could do was to allow him to stay in the home if the mortgage account was returned to a current status. He then told Green Tree that he would inquire about purchasing the home from Ms. Dudley and that he would let Green Tree know any developments.

Nevertheless, at various times throughout 2012 defendant Green Tree contacted the plaintiffs numerous times in order to find out when and if plaintiffs were planning on moving out of the home. On or about February 20, 2012 plaintiffs' sister, who is not a party to this litigation, made a payment to Green Tree that made the account current. However, when no further payments came, Green Tree resumed its attempts to contact plaintiffs to learn of their plans. Plaintiffs moved out of the home on May 20, 2012. From January 1, 2012 until the date of their departure,

2

plaintiffs paid no rent to their landlord and made no payments to Green Tree. Plaintiffs had no further contact with Green Tree after leaving the home.

On September 5, 2012, the plaintiffs filed the instant lawsuit alleging that the defendant had violated provisions of the North Carolina Debt Collection Act ("NCDCA") and the Telephone Consumer Protection Act ("TCPA") 47 U.S.C. § 227(b)(1)(A)(iii). On April 22, 2013, this Court denied the defendant's motion to dismiss. [DE 18].

## DISCUSSION

### I. NON-DISPOSITIVE MOTIONS.

Plaintiffs' motion for leave to file physical evidence is granted and plaintiffs are allowed to physically file the recordings of voicemail messages left by defendant for plaintiffs and the Court has considered this evidence in ruling on the motions for summary judgment.

Defendant's motion to substitute a redacted version of exhibit C to plaintiffs' motion for summary judgment is granted. This exhibit is a copy of Green Tree's Account Servicing Notes which includes telephone numbers, some identifying personal information, and the names of third parties not directly related to this litigation. Plaintiffs have not objected to the motion and for good cause shown the Court grants defendant's motion. Exhibit C to plaintiffs' motion for summary judgment shall be replaced by the redacted version submitted by Green Tree in support of its motions to substitute and the exhibit C provisionally filed by plaintiffs under seal shall remain sealed. Plaintiffs are directed to file the new version of exhibit C within five days of the entry of this order.

### II. SUMMARY JUDGMENT MOTIONS.

A motion for summary judgment cannot be granted unless there are no genuine issues of material fact for trial. FED. R. CIV. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).

3

The moving party must demonstrate the lack of genuine issue of fact for trial and if that burden is met, the party opposing the motion must "go beyond the pleadings" and come forward with evidence of a genuine factual dispute. *Celotex*, 477 U.S. at 324. The Court must view the facts and the inferences drawn from the facts in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986). Conclusory allegations are insufficient to defeat a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986) ("[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment.") (emphasis in original).

    A. Telephone Consumer Protection Act Claim.

The defendant has adequately established that there is no issue of material fact concerning plaintiffs' TCPA claim. The uncontroverted evidence shows that Green Tree's telephone system was not an automated telephonic dialing system and therefore, Green Tree could not have been in violation of 47 U.S.C. § 227(b)(1)(A). Further, plaintiffs raised no opposition to defendant's argument on this claim in their response brief, and have effectively conceded that Green Tree is entitled to summary judgment on this claim. Accordingly, summary judgment in favor of defendant is granted on plaintiffs' TCPA claim.

    B. North Carolina Debt Collection Act Claims.

Conduct by debt collectors in North Carolina is governed by the NCDCA. *Reid v. Ayers*, 531 S.E.2d 231, 233 (N.C. App. 2000) (citing N.C. Gen. Stat. §§ 75-51 to 75-55). To state a claim under the NCDCA, three "threshold" requirements must be satisfied" (1) the obligation owed must be a "debt," (2) the one owing the obligation must be a "consumer," and (3) the one trying to collect the obligation must be a "debt collector." *Id.* In addition to these requirements,

4

Case 7:12-cv-00258-BO   Document 47   Filed 03/27/14   Page 4 of 9

plaintiffs must meet the generalized requirements of the North Carolina Unfair and Deceptive Trade Practices Act ("UDTPA"). *Ross v. Wash. Mut. Bank*, 566 F. Supp. 2d 468, 479 (E.D.N.C. 2008, *aff'd, Ross v. F.D.I.C.*, 625 F.3d 808 (4th Cir. 2010)). Plaintiffs must forecast evidence of an unfair act, in or affecting commerce, that has proximately caused plaintiffs' injuries. *Id.*

Plaintiffs argue that the 2009 amendments to the NCDCA removed the requirement that plaintiffs show they are consumers who have incurred a debt and therefore they do not need to show that they meet the generalized elements of a UDTPA claim. Further they argue that *Reid* is no longer good law. This is plainly not the case. First, the NCDCA itself plainly requires that plaintiffs meet these elements. N.C. Gen. Stat. § 75-50 defines the terms "consumer" and "debt" and the remainder of the NCDCA is tied directly to these definitions. Further, since 2009, state and federal courts in North Carolina have continued to recognize that plaintiffs bringing NCDCA claims must first meet the threshold requirements explained in *Reid. Simmons v. Kross Lieberman & Stone, Inc.*, 746 S.E.2d 311, 315–16 (N.C. App. 2013) (affirming *Reid* in the debt collector context); *Glenn v. FNF Servicing, Inc.*, 2013 WL 4095524, *3–4 (E.D.N.C. Aug. 13, 2013) (plaintiffs suing under NCDCA for conduct arising after the 2009 amendments were still required to prove status as a consumer and prove Chapter 75 elements of proximate cause and damages). Therefore, the law has not changed and plaintiffs still must show that they meet the threshold requirements laid out in *Reid*, 531 S.E.2d at 233, and the UDTPA.

In denying defendant's motion for summary judgment, this Court held that NCDCA "extends to claims by individuals against whom a debt collector has made purposeful, targeted, and directed attempts to collect a debt alleged to be owed by the plaintiffs." [DE 18 at 6]. In that order, the Court held that plaintiffs had sufficiently alleged that Green Tree attempted to collect a debt from them for which they were not liable. [*Id.*]. At summary judgment, however, in order to

5

prevail the parties must come forward with more than allegations, they are required to present evidence supporting their allegations. Here, plaintiffs have failed to proffer evidence which supports their allegations that they are "consumers" allegedly obligated to Green Tree for a "debt" or that Green Tree alleged that plaintiffs owed it a debt.

The evidence produced by discovery in this case reveals that plaintiffs are not consumers and never owed a debt to Green Tree. There was no "business dealing or other consensual obligation" between plaintiffs and Green Tree. *DirecTV, Inc. v. Callahan*, No. 5:02-cv-741-BO(3), slip op. at 4 (E.D.N.C. Apr. 2, 2003) (unpublished); *DirecTV v. Breedlove*, 2003 U.S. Dist. LEXIS 24694, *7–8 (E.D.N.C. Mar. 18, 2003) (unpublished) (recognizing that the NCDCA's "definition of debt, while broadly including 'any obligation' is nevertheless limited by the qualification that the debt must be 'owed by or due from a consumer'"). Additionally, there is no evidence that Green Tree alleged that plaintiffs were obligated to Green Tree for the Dudley Debt. Rather the eveidence shows that Green Tree was communicating with plaintiffs to determine (a) if plaintiffs were interested in remaining in the manufactured home, as they had indicated, and if so, arranging payment terms, and (b) the physical status of the manufactured home (i.e. whether or not it was occupied and when it would become vacant).

The evidence shows that it is undisputed that plaintiffs never entered into any contract with Green Tree, applied for credit with Green Tree, or personally paid Green Tree any money. Similarly it is undisputed that plaintiffs are not responsible for the Dudley Debt and that Green Tree never asked plaintiffs to assume the Dudley Debt. In fact, Timothy testified that Green Tree told him that it was not possible for him to assume the Dudley Debt on the home as Green Tree was the lienholder, not the owner, and did not have a power of attorney from Ms. Dudley.

6

Therefore the issue is whether or not plaintiffs have proffered enough evidence from which a reasonable jury could deduce that Green Tree was attempting to collect a debt from plaintiffs for which they were not liable. Plaintiffs have not done so. The evidence shows that Green Tree was willing to forego its right to immediately initiate foreclosure and repossession proceedings against the manufactured home in light of plaintiffs' stated desire to remain in the home. In exchange for allowing plaintiffs to remain in the home Green Tree needed the mortgage on the home to be current and was willing to accept payments from any party, including plaintiffs' sister, that kept the mortgage current. Green Tree's communications with plaintiffs regarding the arrangements that needed to be made for plaintiffs to remain in the home are distinct from an attempt to collect the outstanding Dudley Debt from plaintiffs.

Plaintiffs found themselves in a situation where they were renting a property on a month to month basis from a landlord who had a mortgage on the property. When the landlord defaulted on the mortgage the natural consequence is for the creditor to foreclose on the property and evict the tenants or not allow them to renew the lease. Because plaintiffs were facing eviction through no fault of their own, the creditor, Green Tree, was willing to come up with an alternative solution. It could not sell the property to plaintiffs because it was not the owner and did not have legal authorization to sell on behalf of the landlord. The only way Green Tree could have sold plaintiffs the home is after going through the repossession process which would have resulted in the eviction of plaintiffs. Therefore, Green Tree offered to forego repossessing the home if the mortgage was kept current. Although plaintiffs would not have been making progress towards owning the home themselves, and would have been subject to the landlord's desires, they would have been able to remain in the home as far as the creditor was concerned.

7

Case 7:12-cv-00258-BO   Document 47   Filed 03/27/14   Page 7 of 9

Plaintiffs never agreed to this plan with Green Tree. As a result, Green Tree was not receiving payments for the home, but knew plaintiffs wanted to remain in the home. Rather than simply initiate repossession, Green Tree made multiple attempts to contact plaintiffs to determine if they would keep the mortgage current and remain in the home or if they would vacate the home. Instead of providing a direct answer, plaintiffs stopped returning Green Tree's calls remained in the home without making any payments to Green Tree or the landlord. Essentially, they were able to live rent free from January until May, 2012.

Plaintiffs have not offered any evidence which supports their version of events where Green Tree attempted to make them believe they were liable for the Dudley Debt or demanded that they pay the Dudley Debt. The phone messages plaintiffs provide show nothing other than that Green Tree made multiple attempts to contact plaintiffs to learn plaintiffs plans and whether or not Green Tree would have to initiate repossession proceedings. In short, there is no evidence that Green Tree violated the NCDCA because plaintiffs have failed to show that Green Tree was ever attempting to collect a debt from them. Therefore the NCDCA does not apply and defendants are entitled to summary judgment.

## CONCLUSION

For the foregoing reasons, the defendant's motion for summary judgment is GRANTED and plaintiffs' motion for partial summary judgment is DENIED. Plaintiffs' motion to file is GRANTED and defendant's motion to substitute is GRANTED. Plaintiffs are ORDERED to substitute the redacted version of exhibit C of plaintiffs' motion for summary judgment submitted by Green Tree in support of its motions to substitute within five days of the entry of this order. The exhibit C provisionally filed by plaintiffs under seal shall remain sealed. The Clerk is DIRECTED enter judgment accordingly and to close the file after the appropriate substitution is made.

SO ORDERED.

This 25 day of March, 2014.

_Terrence W. Boyle_
TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE